HYDROGEO, LLC, and First Bank & Trust East Texas, Appellants.

v.

QUITMAN INDEPENDENT SCHOOL DISTRICT, et al., Appellees

No. 06-15-00007-CV

Court of Appeals of Texas, Texarkana.

Date Submitted: November 18, 2015

Date Decided: January 6, 2016

Rehearing Overruled February 3, 2016

J. Don Westbrook, Coghlan Crowson, LLP, Longview, TX, for appellant.

David Hudson, Tab Beall, Perdue, Brandon, Fielder, Collins & Mott, LLP, Tyler, TX, for Quitman Independent School District et al.

·Nick Nicholas, Anthony W. Mims, Linebarger Goggan ·Blair & Sampson, ·LLP, Houston, TX, for Wood County Upper Solid Waste Sabine Waste Disposal.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Chief Justice Morriss

Hydrogeo, LLC,[1] purchased two interests in oil and gas leases, called "Tract One" and "Tract Two,"[2] in Wood County and paid the ad valorem taxes on those as they accrued during the years of its ownership. But, for whatever reason, the existence of unpaid back taxes on the interests did not come to Hydrogeo's attention until local taxing authorities started collection efforts to collect those taxes against the interests.

·The collection efforts ultimately yielded this·lawsuit by the Quitman Independent School District, Upper ·Sabine Water Disposal District, and Wood County Hospital District (collectively the Districts), each of which has the interests in its respective jurisdiction and seeks collection of the taxes, to the extent such taxes are ·owing to the respective entity.

At trial, the Districts were allowed to introduce into evidence, over Hydrogeo's objection, a previously undisclosed, updated tax statement showing previous and newly accrued taxes owed and reflecting Hydrogeo's ownership of the interests in question. The trial court ruled in its judgment[3] that Hydrogeo owned the two interests; that $51,230.76 was owing in taxes, penalty, and interest on Tract One; that $31,173.21 is owing in taxes, penalty, and interest on Tract Two; and that the respective amounts were in-rem judgments enforceable as liens against the respective interests. On appeal, Hydrogeo complains that admitting the updated tax statement was error and that the judgment improperly included some sums due for personal property taxes, which cannot be a lien against the realty interests in question.

Because (1) admitting the updated tax statement was not an abuse of discretion and (2) the claimed amount of taxes is properly a lien against Hydrogeo's tracts, we affirm the trial court's judgment.

The Districts' lawsuit named various entities[4] and sought to collect unpaid taxes for tax years 2009 through 2011 owing on the interests. The petition stated, "All Defendants named in this suit · either owned the property that is the subject of ·this suit on January 1 of the year in which taxes were imposed on said property, or owned or claimed an interest in or lien on

---

1. First Bank & Trust East Texas (First Bank) is a lienholder in Hydrogeo's interests. Because Hydrogeo's and First Bank's interests are· aligned ·in this appeal, those two parties are collectively referred to as ."Hydrogeo" in this opinion.

2. More specifically, the interest known as Tract One is an undivided interest in an oil and gas lease called the White Denton Lease # 154550, Abstract 588, the D Townsend Survey, and the interest known as Tract Two is a working interest in an oil and gas lease called the IE Robinson Lease # 133400, Abstract 588, the D Townsend Survey. The proper categorization of the interests, other than

their being realty or personalty, is not in issue. Therefore, we will just refer to the interests in this opinion as "Tract One" and "Tract Two" or as "the interests," unless the context requires otherwise.

3. Although the judgment was also entered against Black Diamond and DeBerry 3 Operating Company, neither of those entities are parties to this appeal.

4. Beyond Hydrogeo, the original petition listed as defendants Black Diamond Operating Co., LLC, Rheata Resources, LLC, and Signal Oil Company, LLC.

said property at the time of the filing of this suit."

Hydrogeo answered with a general denial, a verified denial alleging that it could not be held personally liable for the taxes owed during the time that it did not own the property, and an affirmative defense of non-ownership based on the fact that Hydrogeo was not the entity named as the owner on the tax records and did not own the property on the first day of January in the years 2009 through 2011.[5]

The trial court entered findings of fact, finding (1) that Hydrogeo and DeBerry 3 Operating Company, LLC, "are the current owners as of the date of the trial of" Tract One, (2) that "[t]he appraisal roll and tax roll of Wood County incorrectly names Rheata Resources LLC as the owner of" Tracts One and Two, and "incorrectly names Black Diamond Operating Co LLC as the owner of a 0.875 Working Interest" in Tract Two, (3) that "First Bank & Trust East Texas is a lienholder" on Tract One, (4) that "Hydrogeo, LLC is the current owner as of the date of trial of" Tract Two, (5) that "[t]he appraisal roll and tax roll of Wood County incorrectly names Black Diamond Operating Co LLC as the owner of" Tract Two, (6) that "First Bank & [Trust] East Texas is a lienholder on" Tract Two, and (7) that "taxes, penalties and interest are due and owing" on Tracts One and Two for the tax years 2009 through 2011 in the amounts of $51,230.76 and $31,173.21, respectively, "as shown in the delinquent tax statement submitted by Quitman Independent School District ... as Plaintiffs' Exhibit 'A.'" The trial court decreed that the Districts "shall recover of and from" Hydrogeo and First Bank "an in rem judgment" as to Tracts One and Two, having concluded that a tax lien had attached to each of these tracts. The trial court concluded that the Districts were entitled to judgment, attached a lien, and provided for foreclosure.

*(1) Admitting the Updated Tax Statement Was Not an Abuse of Discretion*

■ At trial, the Districts introduced, and the trial court admitted into evidence, a copy of an updated, certified tax statement pertaining to Tracts One and Two. Thereafter, the Districts rested their case. Hydrogeo's objection to the admission of the tax statement claimed that it was not disclosed before trial pursuant to the Districts' duty to supplement discovery requests previously made and that the Districts failed to show good cause or lack of unfair surprise or prejudice. The Districts responded that Hydrogeo was provided with "tax statements" as well as "calculations for taxes under the Texas Property Tax Code." Although Hydrogeo admittedly received "tax statements," it made a particular argument:

> The Request for Production No. 8 was—asked to produce each and every tangible piece of evidence you plan to use at the trial of this cause. The response was, "See Exhibit A," and this is August 14th. The request—the answer was some time in mid [sic] 2013, so by definition, it could not have been produced in 2013.

The trial court noted that the new tax statement was "simply the updated tax rolls" and found that although there was a duty to supplement, "given the nature of this, [he was] going to overrule the objections and admit it."

■ We review the admission of evidence for an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). "The test for an

---

**5.** First Bank filed a separate answer which mirrored the answer filed by Hydrogeo.

abuse of discretion is ... 'whether the court acted without reference to any guiding rules or principles.'" *Cire v. Cummings,* 134 S.W.3d 835, 838–39 (Tex.2004) (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). If there is any legitimate basis for the trial court's ruling, we will uphold the ruling. *Malone,* 972 S.W.2d at 43.

When a party fails to supplement a discovery response in a timely manner, the unsupplemented evidence may be excluded. Tex.R. Civ. P. 193.6(a); *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992). Exclusion is mandatory and automatic unless the court finds there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party. Tex.R. Civ. P. 193.6(a); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 297–98 (Tex.1986); *Good v. Baker,* 339 S.W.3d 260, 271 (Tex. App.—Texarkana 2011, pet. denied). The party seeking to introduce the evidence has the burden of establishing good cause or lack of unfair surprise or prejudice. Tex.R. Civ. P. 193.6(b); *Baker,* 339 S.W.3d at 271. The trial court has discretion to determine whether the offering party has met its burden to show good cause or lack of unfair surprise or prejudice, *Baker,* 339 S.W.3d at 271, and the record must support such finding, Tex.R. Civ. P. 193.6(b).

Hydrogeo contends that, because the Districts failed to show either (1) good cause for failing to supplement its discovery responses or (2) that Hydrogeo was not unfairly surprised by the tax statement, the trial court abused its discretion in admitting the tax statement. *See* Tex.R. Civ. P. 193.6(b). The Districts claim that the tax statement was properly admitted into evidence, because Hydrogeo was not unfairly surprised. In a case similar to this one, our sister court held that lack of unfair surprise "was a legitimate basis for the trial court to admit [a] delinquent tax statement in evidence." *Williams v. Cnty. of Dallas,* 194 S.W.3d 29, 33 (Tex.App.—Dallas 2006, pet. denied). In *Williams,* the taxing units attached a 1999 tax statement to the petition, but failed to supplement with the updated 2003 tax statement. *Id.* at 32. As in this case, it was undisputed that the taxing units did not disclose the updated tax statement in response to a discovery request.

However, it is clear Williams was given notice that the taxing units were attempting to collect all unpaid taxes assessed against the property, not just unpaid taxes through 1999. In their original petition, the taxing units described the property against which the taxes were assessed; stated they sought delinquent taxes, penalties, interest, and costs owed against the property; attached a copy of the taxes delinquent through 1999; and gave notice the lawsuit included all claims for taxes becoming delinquent on the property after the lawsuit was filed and up to the day of judgment. *See* Tex. Tax Code Ann. § 33.42(a) (Vernon 2001) (taxing unit shall include all taxes due on property in suit to collect delinquent taxes); *Id.* § 33.42(b) (trial court shall include in judgment taxes that became delinquent after lawsuit filed). And the exhibit attached to the petition detailed the amounts due through 1999 and stated, "This suit covers all delinquent taxes owed on this property, whether or not itemized herein for all years." As a result, the pleadings provided notice that the taxing units sought recovery of all unpaid taxes.

*Id.* at 33. As in *Williams,* the pleadings in this case provided notice that the Districts sought recovery of all unpaid taxes. The second amended petition states that suit is

brought "for recovery of delinquent taxes under TEX. TAX.CODE § 33.41," and further advises:

> Claims for all taxes becoming delinquent on said property at any time subsequent to the filing of this suit, up to the day of judgment, including all penalties, interest, attorney's fees, and costs on same, are incorporated in this suit, and Plaintiff(s) is entitled to recover the same, on proper proof, without further citation or notice.[6]

This language placed Hydrogeo on notice that all unpaid taxes would be sought at the time of trial. Additionally, the Districts responded to Hydrogeo's discovery requests, in which the Districts stated, "The lawsuit is to foreclose delinquent tax liens on defendants' property. Said liens exist by reason of unpaid property taxes existing on defendants' property. Relevant law is contained within the provision of the Texas Property Tax Code in general and specifically Chapters 31–34." Section 33.42(a) of the Texas Tax Code, entitled "Taxes Included in Foreclosure Suit," provides, "In a suit to foreclose a lien securing payment of its tax on real property, a taxing unit shall include all delinquent taxes due the unit on the property." TEX. TAX CODE ANN. § 33.42(a) (West 2015). Hydrogeo could not, therefore, have been unfairly surprised by the tax statement reflecting the current amounts of all unpaid taxes.

Hydrogeo claims, though, that pages four and seven of the updated tax statement included new information beyond the increase in the amount of taxes, penalties, and interest due. Until oral argument of this appeal, Hydrogeo did not indicate what this new information was, but a review of the relevant pages of the updated tax statement indicates that Hydrogeo is listed as the owner of Tracts One and Two on pages four and seven. Previously produced tax statements listed Black Diamond and Rheata as the owners of Tracts One and Two. Because Hydrogeo admitted at trial—through the testimony of its owner, William Godsey, Jr.—that it owns fifty percent of Tract One and one hundred percent of Tract Two, the listed ownership change on the updated tax statement could not have unfairly surprised Hydrogeo.

Here, the lack of unfair surprise is supported by the record. As previously mentioned, Hydrogeo was on notice that the Districts sought to recover the entire amount of unpaid taxes. Further, the record clearly indicates—in the absence of the tax statement—that Hydrogeo owned the subject property. We, therefore, conclude that, because the record supports a finding that Hydrogeo was not unfairly surprised by the updated tax statement, the trial court did not abuse its discretion by admitting the evidence.

### (2) The Claimed Amount of Taxes Is Properly a Lien Against Hydrogeo's Tracts

Hydrogeo also contends that—because it proved lack of ownership and further proved that the amount of the tax lien derives from assessed values, which not only include the value of the leases, but also include the value of personal property used in connection with oil and gas production[7]—the burden of proof shifted to the Districts to establish sufficient evidence to support their alleged claims. This point of error claims that Hydrogeo defeated the presumption contemplated by Section

---

6. This language is also included in the original and first amended petitions.

7. This type of personal property typically includes production equipment such as casing, tubing, pump jacks, tanks and surface pipelines.

33.47(a) of the Texas Tax Code.[8] We disagree.

The trial court filed findings of fact and conclusions of law in support of its final judgment. Findings of fact entered in a case tried to the bench "are of the same force and dignity as a jury's answers to jury questions." *39 Acres v. State*, 247 S.W.3d 384, 387 (Tex.App.—Texarkana 2008, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). We review fact-findings for legal and factual sufficiency under the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). When considering a factual-sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence that supports the trial court's judgment. *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 625 (Tex.App.—Texarkana 2008, pet. denied). A judgment should be set aside only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). In evaluating legal sufficiency of the evidence, we view the evidence in the light most favorable to the prevailing party. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994). To reverse for legal insufficiency, we must be persuaded that reasonable minds could not differ on the matter in question. *Id.* at 25.

We conduct a de novo review of the trial court's conclusions of law. *Bendalin v. Youngblood & Assocs.*, 381 S.W.3d 719, 735 (Tex.App.—Texarkana 2012, pet. denied). Although a trial court's conclusions of law are not reviewable for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

The Texas Tax Code addresses evidentiary concerns in delinquent tax cases:

> In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

*See* Tex. Tax Code Ann. § 33.47(a).

When documentation is admitted into evidence under Section 33.47(a) of the Texas Tax Code, the taxing entity establishes a "prima facie case as to every material fact necessary to establish the cause of action." *Davis v. City of Austin*, 632 S.W.2d 331, 333 (Tex.1982); *see Maximum Med. Improvement, Inc. v. Cnty. of Dallas*, 272 S.W.3d 832, 835 (Tex.App.—Dallas 2008, no pet.). A rebuttable presumption then arises "that the taxing entity has taken all actions necessary to obtain legal authority to levy the tax, including proper delivery of all required tax notices." *Maximum Med. Improvement, Inc.*, 272 S.W.3d at 835 (citing *Flowers v. Lavaca Cnty. Appraisal Dist.*, 766 S.W.2d 825, 828 (Tex.App.—Corpus Christi 1989, writ denied) (prima facie case creates presumption that taxing authority has taken all actions necessary to obtain legal authority to levy tax)); *see Phifer v. Nacogdoches Cnty. Cent. Appraisal Dist.*, 45 S.W.3d

**8.** *See* Tex. Tax Code Ann. § 33.47(a) (West 2015).

159, 174 (Tex.App.—Tyler 2000, pet. denied) (admitted certified copies of delinquent tax record established prima facie case on all material facts necessary to establish cause of action, including taxpayer's receipt of delinquent tax notices).

■ Based on the foregoing statute, the Districts introduced a certified copy of the updated tax roll and rested their case. The Districts claim that this evidence raised the Section 33.47(a) presumption and established their prima facie case. Hydrogeo contends that the presumption envisioned by Section 33.47(a) did not arise because Hydrogeo filed a verified denial (1) contesting ownership of the property during the applicable tax years (2009–2011) and (2) questioning the sufficiency of the lien on the property, both real and personal.

We initially examine the issue of whether the Section 33.47(a) presumption ever arose, in light of Hydrogeo's verified denial contesting ownership of the property. The denial alleged,

> This suit is an improper suit and Defendant may not be held personally liable for the taxes owed during the time Defendant did not own the property. Defendant denies each and every allegation contained in the petition, which is the basis of Plaintiffs' action. Defendant denies all allegations and demands strict proof of all items therein.

Hydrogeo further asserted, as an affirmative defense,

> [Hydrogeo] is not the entity named as the owner on the tax records and it did not own the property on the first day of January in the years the Plaintiffs complain. The affirmative defense of non-ownership is applicable in this case, under Section 42.09 of the Texas Tax Code. Defendant did not own the property on which the tax was imposed on the first day of January of the year for which the tax was imposed.

Hydrogeo relies on *Maximum Medical Improvement, Inc.*, for the proposition that the Section 33.47(a) presumption did not apply in light of its verified denial. In *Maximum Medical Improvement, Inc.*, the taxpayer filed a verified denial stating that it was improperly sued and that another entity was the owner and, thus, the proper party. *Id.* at 836–37. Dallas County's tax notices identified another entity as the owner of the subject property, and the affidavit it offered attested only to the accuracy of the amount of taxes due. *Id.* at 837.

The court recognized, "Although Section 33.47(a) provides a rebuttable presumption, if the identity of the entity named as the owner does not match the identity of the defendant sued for non-payment, no presumption arises as to the defendant and we review the record to determine if the evidence is legally sufficient." *Id.* (citing *Pete Dominguez Enters., Inc. v. Cnty. of Dallas*, 188 S.W.3d 385, 387 (Tex.App.—Dallas 2006, no pet.). Consequently, because the verified denial put Dallas County on notice that the taxpayer was denying ownership, Dallas County was required to introduce legally sufficient evidence to support its claims that the taxpayer owned personal property at the listed address for the listed years. This it failed to do. As a result, the appellate court reversed the judgment in favor of Dallas County and rendered a take-nothing judgment on its claims. *Id.*

There are at least three key distinctions between *Maximum Medical Improvement, Inc.*, and this case. In *Maximum Medical Improvement, Inc.*, the defendant taxpayer was not identified anywhere on the tax statement, which listed an entirely different entity as the owner of the subject property, and the taxpayer denied owner-

ship. In this case, Hydrogeo was listed as owning Tracts One and Two beginning with tax year 2012 and continuing through tax year 2013. The statement showed no taxes due for the two years of Hydrogeo's ownership, because Hydrogeo paid those two years' taxes. The tax statement did not list Hydrogeo as the owner of either tract for tax years 2009 through 2011, because Hydrogeo did not own the property during those years. Instead, the statement listed different owners of both tracts in the years before Hydrogeo's purchase.[9] So, although the tax statement indeed listed Hydrogeo as the owner of both tracts, it did not indicate that Hydrogeo owed any taxes. More importantly, though, at trial through the testimony of Godsey, Hydrogeo admitted it was the owner of both interests. Unlike in *Maximum Medical*, the updated tax statement here named Hydrogeo as owner, and ownership was not disputed at trial.

Moreover, *Maximum Medical* involved a tax claim for personal liability on personal property, while this case involves an *in rem* tax lien.[10] *Cf.* TEX. TAX CODE ANN. § 32.07(a) (West 2015) (applying to "Personal Liability for Tax" and providing that "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed...."). Section

42.09 of the Texas Tax Code does *not* permit the affirmative defense Hydrogeo attempted to raise:

> (b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:
>
> *(1) if the suit is to enforce personal liability for the tax,* that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed....

TEX. TAX CODE ANN. § 42.09 (West 2015) (emphasis added).

Hydrogeo claimed, in its verified denial, that it may not be held personally liable for taxes owed during the time it did not own the property. We agree. However, the judgment here was not a personal judgment against Hydrogeo; rather, the judgment was *in rem*. Consequently, the affirmative defense of non-ownership for the earlier years in question does not apply here. *See* TEX. TAX CODE ANN. § 42.09(b)(2); *Waller Indep. Sch. Dist. v. Miller,* No. B14–87–00821–CV, 1988 WL 75757 (Tex.App.—Houston [14th Dist.] July 21, 1988, no pet.) (not designated for publication) (defense of non-ownership not available, in part, because action sought only foreclosure, not personal liability). Therefore, Hydrogeo's affirmative defense of non-ownership did not extinguish the

9. The statement (account summary) initially listed Black Diamond as the owner of Tract One for tax year 2009 and set forth the amount of taxes due if paid by a certain date. Rheata was listed as the owner of Tract One for tax years 2010 and 2011. The following page identified Hydrogeo as the owner of Tract One for tax years 2012 and 2013 and correctly indicated that there is no balance due because taxes for these two years were paid by Hydrogeo. The tax statement lists the same information for Tract Two; it initially lists Black Diamond as the owner of Tract Two for tax years 2007 through 2009, together with a statement of taxes due. It then lists Rheata as the owner of Tract Two for tax

years 2010 and 2011, together with a statement of taxes due. Finally, the statement identifies Hydrogeo as the owner of Tract Two for tax years 2012 and 2013, and it correctly indicates that the taxes for 2012 and 2013 were paid.

10. "An *in rem* action is a proceeding or action instituted directly against a thing, an action taken directly against property, or an action that is brought to enforce a right in the thing itself" and "affects the interests of all persons in the world in the thing." *Bodine v. Webb,* 992 S.W.2d 672, 676 (Tex.App.—Austin 1999, writ denied).

presumption of Section 33.47(a). *Maximum Medical Improvement, Inc.,* therefore, does not mandate a legal-sufficiency review, as is required when no statutory presumption arises. *See Seiflein v. City of Houston,* No. 01–09–00361–CV, 2010 WL 376048, at *3 (Tex.App.—Houston [1st Dist.] Feb. 4. 2010, no pet.) (mem.op.) (judgment valid where, though tax statements failed to identify defendant as property owner, taxing authorities introduced evidence of ownership, including certified copy of deed showing property conveyed to defendant).

■ Hydrogeo also contends, though, that the Section 33.47(a) presumption was successfully rebutted by virtue of its verified denial questioning the sufficiency of the lien on the property; it claims the lien attached not only to real property, but also to personal property, thus making the lien unenforceable.

This contention is based on the Districts' following live pleading at the time of trial:

All of the property described above was, at the time the taxes were assessed, located within the territorial boundaries of each taxing unit in whose behalf this suit is brought. All Defendants named in this suit either owned the property that is the subject of this suit on January 1 of the year in which taxes were imposed on said property, or owned or claimed an interest in or lien on said property at the time of the filing of this suit. *The value of any personal property that may be described above, and against which the tax lien is sought to be enforced, is in excess of FIVE HUNDRED AND NO/00 DOLLARS ($500.00).*

(Emphasis added). The Districts take issue with the claim that the lien attached to personal property. They point out that the italicized language in the above-quoted paragraph states that reference is made only to "the value of any personal property that *may* be described above" and that no personal property is described anywhere in the petition. In fact, the only property described in the petition is Tracts One and Two, both of which are oil and gas leases. Pursuant to the Tax Code, "Real Property" includes land, an improvement,[11] a mine or quarry, or a mineral in place. TEX. TAX CODE ANN. § 1.04(2) (West 2015). Oil and gas leases have long been held to be real property because such leases convey an "interest in land, subject to taxation as such in the counties in which the respective tracts of land are situated." *Sheffield v. Hogg,* 124 Tex. 290, 77 S.W.2d 1021, 1024 (1934); *see Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 572 (Tex.1981); *In re Devon Energy Prod. Co., L.P.,* 321 S.W.3d 778, 783 (Tex.App.—Tyler 2010, no pet.) (oil and gas lease creates interest in real property).

The judgment, as previously mentioned, only forecloses a tax lien against real property. Given this language, it appears that the tax lien did not include any personal property. Contrarily, Hydrogeo claims that part of the assessed value of Tracts One and Two includes the value of the on-site production equipment. So, even though the judgment is *in rem,* it claims that because at least a portion of the assessed value derives from on-site production equipment, the lien is unenforceable. This assertion lacks evidentiary support.

Hydrogeo claims otherwise, in reliance on two exhibits introduced at trial.[12] The

---

11. Although "improvement" is defined in this section, it does not specifically include production equipment. *See* TEX. TAX CODE ANN. § 1.04(3) (West 2015).

12. Hydrogeo also relies on Godsey's trial testimony that the value of the personalty located on Tract One was $104,962.00 and the value of the personalty located on Tract Two

first such exhibit is the 2008 assignment and bill of sale whereby Chesapeake Exploration, L.L.C., conveyed Tracts One and Two to Black Diamond. In addition to the conveyance of real property, the assignment and bill of sale also conveyed "[a]ll personal property, equipment, fixtures and improvements ... situated on the lands covered by the Leases conveyed ... therein." Notwithstanding the fact that this conveyance was not to Hydrogeo, it contends that the assignment means that "the leases in question" include "all tangible personalty, property ... [and] equipment...." To the contrary, the leases were conveyed to Black Diamond in paragraph (1) of the assignment and bill of sale, while the personalty was separately conveyed in paragraph (7). The assignment does not state that the leases include the aforementioned personalty. Had paragraph (7) been omitted from this document, the conveyance would nevertheless have included the subject oil and gas leases. This exhibit proves nothing more than a 2008 conveyance of the leases and separately described personalty from Chesapeake to Black Diamond.

The second exhibit Hydrogeo relies on is the Districts' 2011 tax statement pertaining to Tract Two, the value of which was assessed at $340,000.00. This exhibit, in and of itself, does not prove that the assessed value of Tract Two included the value of any personal property. Hydrogeo points to a document in the clerk's record, which was not introduced as a trial exhibit, to support its position that the assessed value of Tract Two included the value of personalty. The referenced document is a

2011 appraisal card from Wood County's appraisal consultants, Pritchard and Abbott. The appraisal card indicates that the appraised value of Tract Two includes "equipment value." Because this document was not considered by the trial court, we likewise cannot consider it. This evidence fails to show that any part of the tax lien derived, even in part, from the value of personal property.[13]

Because there is no evidentiary support for the assertion that the assessed value derives, even in part, from personal property, this argument is without merit. The updated tax statement was prima facie proof as to every material fact necessary to establish the cause of action. *See Davis*, 632 S.W.2d at 333. Consequently, the entire tax lien is enforceable against Hydrogeo's interests in Tracts One and Two.

We affirm the trial court's judgment.

was $199,522.00. Hydrogeo's Exhibit 9, admitted into evidence, lists each item of equipment located on each tract, together with its value. While this may be some evidence of the value of the personalty located on each tract, it is not evidence that the value of any

such personalty was included in the assessed value of either tract.

13. Even if this document had been included in the trial record, there is no evidence of what the equipment was, or whether it was properly classified as personal property.