

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00281-CV

**UNITED INDEPENDENT SCHOOL DISTRICT**,
Appellant

v.

**U.S. TRAILER RELOCATORS, LLC**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2016-TXA-000111-D1
Honorable Elma T. Salinas Ender, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice
            Irene Rios, Justice

Delivered and Filed:  June 13, 2018

REVERSED AND REMANDED

Appellant United Independent School District ("UISD") appeals the trial court's order rendering a take nothing judgment in its suit to collect delinquent taxes from U.S. Trailer Relocators, LLC ("USTR"). We reverse the trial court's order and remand the cause to the trial court.

## BACKGROUND

On February 6, 2016, UISD filed an original petition to collect delinquent taxes from USTR, alleging USTR owes delinquent ad valorem taxes on its commercial trucks for the years

2012, 2013, 2014, and 2015. In the petition, UISD sought judgment against USTR for all taxes, penalties, and interest owed and foreclosure of its tax lien on USTR's property. At the time of trial on July 6, 2016, UISD sought to recover unpaid taxes for years 2012 and 2013 only. At the outset of the trial, UISD notified the trial court it no longer sought personal liability against USTR, but sought only to foreclose the tax lien securing payment of the tax delinquency.

During trial, USTR introduced documents listing the trucks which the Webb County Appraisal District ("WCAD") alleges USTR owned on January 1, 2012 and January 1, 2013. Ruben Garibay, president of USTR, testified USTR did not own some of the trucks as alleged by WCAD. USTR presented evidence showing it sold nine of the 2012-listed trucks in October and November of 2011. USTR also presented evidence showing USTR sold four of the 2013-listed trucks on March 10, 2012. Garibay explained that because the businesses that bought those trucks are salvage yards and did not intend to put the trucks back on the road, USTR did not transfer title to the trucks to the new owners.

Although Garibay acknowledged USTR has an obligation to file a rendition statement of its personal property with WCAD every year, Garibay explained USTR, which began operating in 2011, did not file a rendition statement with WCAD in 2012 or 2013. Garibay further explained that in 2014, when WCAD discovered USTR did not file a rendition statement in 2012 or 2013, WCAD approached USTR about the taxes it allegedly owed for 2012 and 2013. USTR filed notices of protest for the 2012 and 2013 appraisals on June 10, 2014. On July 16, 2014, the appraisal review board dismissed USTR's protests for lack of jurisdiction. Garibay testified USTR did not file a petition for judicial review of WCAD's denial of the protests. Garibay testified he was asking the court to give USTR the opportunity to appeal the 2012 and 2013 appraisals and "pay what is owed and what is fair."

On October 13, 2016, the trial court signed a judgment, finding USTR did not own nine of the 2012-listed trucks on January 1, 2012 and did not own four of the 2013-listed trucks on January 1, 2013, and rendering judgment for USTR. On January 18, 2017, the trial court signed an order granting UISD's motion for new trial, stating "[t]he Court only intended to rule that no tax was owed on the equipment not owned by [USTR] that had been erroneously included" and the judgment "appears to reflect erroneously that [UISD] recover no taxes at all."

The trial court conducted a second bench trial on the merits on April 13, 2017. At the outset of the proceeding, the parties stipulated that "all of the evidence presented and admitted at the trial on the merits held by the Court on July 6, 2016, remains and is properly before the Court to be fully considered for purposes of the new trial to be held in this case." UISD presented evidence that at the time of trial, USTR owed UISD $13,450.22 in taxes and late penalties for 2012 and $18,197.56 in taxes and late penalties for 2013. These amounts were based on the appraised value of USTR's property for the years in question as provided to UISD by WCAD. The trial court explained it was still the court's ruling that USTR did not own the trucks previously mentioned and USTR should not owe any taxes on those trucks. The trial court further indicated the purpose of the second trial was solely to determine the appraised value of the trucks USTR did own on January 1 of 2012 and 2013 and not revisit the issues resolved in the first trial. Garibay explained that when USTR protested its 2014 appraisal, USTR and WCAD established a methodology to appraise the tax value of USTR's trucks for 2014 and 2015 using the number of miles each truck traveled in the state during the year. Garibay testified he used this methodology to determine what he believed to be the correct tax value of USTR's trucks for 2012 and 2013, which did not include

the trucks the trial court previously found were not owned by USTR on January 1 of those years. Prior to trial, USTR made payments[1] toward its 2012 and 2013 taxes based on this methodology.

On April 20, 2017, the trial court signed an order decreeing that USTR "owes no taxes claimed in this matter."[2]

UISD appeals, contending that non-ownership of property on January 1 of the subject tax year is not a defense to in-rem liability in a delinquent tax suit, and the trial court erred by admitting valuation evidence in a delinquent tax suit that was not an appeal from a decision of the county's appraisal review board.

## ANALYSIS

**UISD Presented Prima Facie Evidence it was Entitled to Collect UTSR's Delinquent Taxes**

Property owners must "render for taxation all tangible personal property used for the production of income that the person owns or that the person manages and controls as a fiduciary on January 1." TEX. TAX CODE ANN. § 22.01(a) (West 2015). To render property for taxation, a property owner must file a rendition statement containing a description of the property with the appraisal district for the county in which the property is taxable. *Id.* at §§ 22.01(a), 22.25. "If the chief appraiser discovers that . . . personal property was omitted from an appraisal roll in one of

---

[1] The record shows that on March 30, 2017, USTR made a partial payment toward its 2012 taxes in the amount of $1,414.67 and a partial payment toward its 2013 taxes in the amount of $1,896.77.

[2] On May 14, 2017, the trial court signed corrected findings of fact and conclusions of law, wherein the trial court found that, pursuant to Section 42.091(b)(1) of the Texas Tax Code, USTR did not own some of the trucks on January 1, 2012 and January 1, 2013 as alleged by WCAD. Therefore, the trial court found USTR's affirmative defense pursuant to Section 42.091(b)(1) "was proper." Moreover, the trial court found USTR is not liable for ad valorem taxes on personal property for 2012 and 2013 "because full payment due has been made by [USTR] to [UISD]." Accordingly, the trial court concluded UISD should take nothing on its claims.

These corrected findings of fact and conclusions of law were attached to UISD's brief as an exhibit, but were not included in the clerk's record. Because the trial court's findings of fact and conclusions of law "were not properly included in the appellate record, we are unable to consider them in our review." *Hogg v. Lynch, Chappell & Alsup, P.C.,* 480 S.W.3d 767, 773–74 (Tex. App.—El Paso 2015, no pet.).

the two preceding years, he shall appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records." *Id.* § 25.21(a).

Generally, "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed." *Id.* § 31.02(a) (West Supp. 2017). The Tax Code provides:

> On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches. The lien exists in favor of each taxing unit having power to tax the property.

*Id.* § 32.01. "At any time after its tax on property becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." *Id.* § 33.41.

USTR, which began operating in 2011, did not file a rendition statement with WCAD in 2012 or 2013. *See id.* §§ 22.01(a), 22.25. When WCAD discovered in 2014 that USTR had been operating without filing rendition statements, WCAD appraised the value of the property USTR allegedly owned on January 1 of 2012 and 2013 and entered the property and its appraised value in the appraisal records. *See id.* § 25.21(a). At both trials, UISD presented certified copies of USTR's tax statement showing the amount of taxes, penalties, and interest owed by USTR for years 2012 and 2013, which constituted "prima facie evidence . . . that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts." *See id.* § 33.47(a). After UISD made its prima facie case by introducing the tax records required by Section 33.47(a), the burden shifted to USTR to show, by introducing competent evidence, that it paid the full amount of taxes, penalties, and interest or that there is some other defense that applies to the case. *See Reinmiller v. Cty. of Dallas*, 212 S.W.3d 835, 837 (Tex. App.—Eastland 2006, pet. denied).

**Availability of Non-Ownership Defense**

At trial, USTR argued it did not owe the amount of taxes alleged by UISD in part because USTR did not own some of the trucks WCAD included in its appraisal of USTR's property for 2012 and 2013. As the basis for this argument, USTR relied on Section 42.09(b)(1), which provides a property owner in a suit to collect a delinquent property tax may plead as an affirmative defense, "if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed." TEX. TAX CODE § 42.09(b)(1). At the outset of the first trial, UISD clarified it was no longer seeking personal liability for the tax delinquency, and sought only the foreclosure of its tax lien. *See id.* § 33.41 ("a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both."). UISD argues non-ownership was unavailable as a defense in this case because it sought only to foreclose the tax lien on USTR's property. USTR appeared to argue at trial that Section 42.09's non-ownership defense applies to this case because UISD pleaded it was seeking personal liability for the delinquent taxes. Thus, we must evaluate the language of Section 42.09 to determine whether the non-ownership defense is available in this case, where UISD pleaded but then abandoned the cause seeking personal liability for the tax delinquency.

"The construction of a statute is a question of law that we review de novo." *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011). "In construing statutes, our primary objective is to give effect to the Legislature's intent." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, No. 16-0626, 2018 WL 1974485, at *4 (Tex. Apr. 27, 2018). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* When a statute is unambiguous, "we construe the statute's words according to their

plain and common meaning." *Id.* We are also mindful that "words' meanings cannot be determined in isolation but must be drawn from the context in which they are used," and in interpreting Section 42.09, we consider how that provision fits within the statutory scheme. *Id.* at \*6. "Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Morris v. Houston Indep. School Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curiam).

A property owner may protest actions taken by the appraisal district, including "determination of the appraised value of the owner's property," "inclusion of the owner's property on the appraisal records," "determination that the property owner is the owner of the property," and "any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner." TEX. TAX CODE § 41.41(a). A property owner may appeal an order of the appraisal review board determining a protest by the property owner or that the property owner has forfeited the right to a final determination of a protest by filing a petition for review with the district court within sixty days after receiving notice of the appraisal review board's final order. *Id.* §§ 42.01(a)(1)(A), (C); 42.21(a), (b). Such an appeal by a property owner is between the property owner and the appraisal district, and "[a] taxing unit may not intervene in or in any other manner be made a party" to the appeal. *Id.* §§ 42.031(b), 42.21(b). "If no proper party seeks judicial review of the board's decision within the statutory time period . . . the board's valuation becomes *final* when the statutory time period expires." *Storguard Investments, LLC v. Harris Cty. Appraisal Dist.*, 369 S.W.3d 605, 612 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (emphasis added); *accord* TEX. TAX CODE § 42.21(a) (failure to timely file a petition bars any appeal of the board's order). Moreover, the Tax Code provides the "procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are *exclusive*, and a property owner *may not raise any of those grounds . . . in defense to a suit to enforce collection of delinquent taxes*." TEX. TAX CODE § 42.09(a) (emphasis added).

By imposing deadlines on taxpayers' ability to protest an appraisal district's valuation of property and providing that the statutory protest procedures are exclusive, the Legislature demonstrated its intent to "provid[e] a taxing entity the ability to establish a final tax roll" so that the taxing entity "can use that information in making its budget." *Kellair Aviation Co. v. Travis Cent. Appraisal Dist.*, 99 S.W.3d 704, 706 n.5, 708 (Tex. App.—Austin 2003, pet. denied). "[T]he tax appraisal protest scheme evidences the Legislature's intent to restrict substantive challenges to the appraisal rolls—making them 'fixed' after the period for chapter 41 protests has elapsed" and the taxes have become delinquent. *Sebastian Cotton & Grain, Ltd.*, 2018 WL 1974485, at \*7; *see also MAG–T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 627 (Tex. App.—Austin 2005, pet. denied) (acknowledging that taxing authorities are not permitted under Section 25.25 to increase the value at which property had been appraised after the appraisal roll has been certified).

There are only two exceptions to Section 42.09(a)'s exclusivity provision:

(b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

> (1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or

> (2) if the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on January 1 of the year for which the tax was imposed.

TEX. TAX CODE ANN. § 42.09(b). Given that the tax code allows a taxing entity to pursue both personal liability and lien foreclosure in a single tax delinquency action, we conclude Section 42.09's non-ownership defense is available to shield only against a taxing entity's effort to "enforce personal liability for the tax." *See id.* § 42.09(b)(1); *Hydrogeo, LLC v. Quitman Indep. Sch. Dist.*, 483 S.W.3d 51, 60 (Tex. App.—Texarkana 2016, no pet.) (affirmative defense of non-ownership was unavailable in a tax delinquency suit filed by school district in which school district

sought foreclosure of the tax lien, not personal liabilty). In this case, although UISD pleaded it sought both personal liability and lien foreclosure, at trial it elected to not pursue the personal liability portion of its available remedies and clarified it sought only foreclosure of the tax lien. Thus, non-ownership of part of the appraised property was not an available defense to the relief sought by UISD.

Because non-ownership is not a defense in a tax delinquency suit where the taxing entity seeks foreclosure of a tax lien on property, we sustain UISD's first issue.

**Trial Court Erred by Admitting USTR's Valuation Evidence**

UISD also contends the trial court erred by admitting valuation evidence in a delinquent tax suit that was not an appeal from a decision of the county's appraisal review board. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000).

During the second trial, USTR argued the amount of taxes it owed was less than the amount alleged by UISD because WCAD should have apportioned the value of the trucks USTR owned in 2012 and 2013 in accordance with the trucks' use in Texas. *See* TEX. TAX CODE § 21.03 (if taxable personal property is used continually outside this state, whether regularly or irregularly, the appraisal office shall allocate to this state the portion of the total market value of the property that fairly reflects its use in this state). Thus, USTR argued the appraisal value of USTR's property for 2012 and 2013 should have been lower.

A taxpayer may not seek reallocation of the value of its property outside the statutory protest scheme provided in Chapter 41. *See Kellair Aviation Co.*, 99 S.W.3d at 709 (the proper method to seek reallocation is by filing a protest under Section 41.41). USTR filed protests with the appraisal review board regarding the appraisal district's valuations for 2012 and 2013 but did not appeal the board's order to the district court. Thus, USTR lost the ability to seek review of the

board's order and could not litigate the appraised value of its property in a suit to enforce collection of delinquent taxes. *See* TEX. TAX CODE §§ 42.09(a), 42.21(a); *City of Bellaire v. Sewell*, 426 S.W.3d 116, 121–22 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("arguing that [one's] property was overvalued . . . is not a proper defense in a suit to recover delinquent taxes"). Because USTR could not argue the value of its property should be reallocated as a defense in this delinquency suit, we conclude the trial court abused its discretion by admitting USTR's evidence regarding the apportioned value of the property.

The record shows that, apart from the non-ownership of certain trucks, the sole basis for USTR's claim at trial that it owed no taxes was that USTR made a tax payment based on the reallocated value of the property USTR owned on January 1 of 2012 and 2013. Because we conclude the trial court's admission and consideration of USTR's valuation evidence likely caused the rendition of an improper judgment, we sustain UISD's third issue. *See* TEX. R. APP. P. 44.1.

By introducing certified copies of USTR's tax statement showing the amount of taxes owed by USTR for years 2012 and 2013, UISD presented prima facie evidence the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts. *See* TEX. TAX CODE § 33.47(a). The record shows USTR did not rebut this presumption by introducing evidence it has paid the full amount of taxes, penalties, and interest or that there is some other defense that applies to the case. *See Reinmiller*, 212 S.W.3d at 837. Accordingly, we conclude UISD is entitled to enforce its tax lien on USTR's property to collect the amount of taxes, penalties, and interest due on USTR's account for years 2012 and 2013.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order and remand the cause to the trial court for calculation of the total amount of taxes, penalties, and interest to which UISD is entitled. *See Sewell*, 426 S.W.3d at 122.

Irene Rios, Justice